**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC.,                    Case No.: 3:24-bk-00496-BAJ

    Debtor.                                   Chapter 7

_____/

AARON R. COHEN, Chapter 7 Trustee,

    Plaintiff,                                Adversary No. 3:25-ap-00007-BAJ

v.

VELANOS PRINCIPAL CAPITAL, INC.,

    Defendant.

_____/

## MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

    Plaintiff, Aaron R. Cohen, Chapter 7 Trustee (the "Trustee"), by and through his undersigned counsel, moves the Court, pursuant to Rules 7054 and 7055, Federal Rules of Bankruptcy Procedure, and Rule 7055-2 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, to enter a judgment by default against Defendant, Velanos Principal Capital, Inc. ("Velanos"), and in support states:

    1.    The Trustee filed his Complaint for Confirmation of Arbitration Award (the "Complaint") on January 10, 2025.

    2.    A Summons was issued by the Clerk on January 13, 2025.

    3.    A copy of the Complaint and Local Rule 7001-1 together with the Summons were properly served pursuant to Rule 7004(b)(3) on January 21, 2025, by U.S. mail to Velanos Attn. Joshua Wearmouth, its Chief Executive Officer, 20101 SW Cypress Street, Newport Beach, CA

92660 and to Velanos at 4695 MacArthur Court, Suite 1100, Newport Beach, CA 92660.  A true and correct copy of the executed Summons is attached hereto and incorporated herein as **Exhibit A**.

4.      No responsive pleading or motion has been filed by Velanos within the time specified by Rule 7012, Federal Rules of Bankruptcy Procedure, and no extension of time was sought or obtained by Velanos.

5.      On February 19, 2025, the Clerk issued a Default against Velanos for failing to serve or file any paper in response to the Complaint as required by law.  A true and correct copy of the Default is attached hereto and incorporated herein as **Exhibit B**.

6.      In support of this Motion, a Declaration of the Trustee is attached hereto and incorporated herein as **Exhibit C.**

7.      No basis exists to preclude the entry of a Final Judgment against Velanos.

WHEREFORE, Plaintiff, Aaron R. Cohen, Chapter 7 Trustee, respectfully requests the Court grant this Motion for Entry of Final Default Judgment and enter a Final Judgment in favor of Plaintiff, Aaron R. Cohen, Chapter 7 Trustee, and against Defendant, Velanos Principal Capital, Inc., as set forth in the form of proposed Final Judgment attached hereto as **Exhibit D**.

Dated:  February 27, 2025                AKERMAN LLP

By: */s/ Raye C. Elliott*
    Raye  C. Elliott, Esq.
    Florida Bar Number: 018732
    Email: raye.elliott@akerman.com
    401 East Jackson Street, Suite 1700
    Tampa, FL 33602
    Phone:  (813) 223-7333
    Fax:  (813) 223-2837

Attorneys for Aaron R. Cohen, Chapter 7 Trustee

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by United States mail, postage prepaid and properly addressed, on February 27, 2025, to:

Velanos Principal Capital, Inc.
Attn. Joshua Wearmouth, its Chief Executive
Officer
20101 SW Cypress Street
Newport Beach, CA 92660

Velanos Principal Capital, Inc.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660

and by email to:

jwearmouth@velanospc.com
josh.wearmouth@protonmail.com

*/s/ Raye C. Elliott*
Attorney

# EXHIBIT A

# U.S. Bankruptcy Court
## Middle District of Florida

In re:
**GENIE INVESTMENTS NV INC.**
Debtor

Bankruptcy Case No. **3:24−bk−00496−BAJ**

**AARON R. COHEN, CHAPTER 7 TRUSTEE**
Plaintiff
v.
**VELANOS PRINCIPAL CAPITAL, INC.**
Defendant

Adversary Proceeding No. **3:25−ap−00007−BAJ**

## *SUMMONS IN AN ADVERSARY PROCEEDING*

**YOU ARE SUMMONED** and required to submit a motion or answer to complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days from the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days of issuance.

| Address of Clerk |
| --- |
| **Clerk, U.S. Bankruptcy Court**<br>**Middle District of Florida**<br>**Bryan Simpson United States Courthouse**<br>**Jacksonville, FL 32202** |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney |
| --- |
| **Raye Curry Elliott**<br>**401 East Jackson Street, Suite 1700**<br>**Tampa, FL 33602** |

If you make a motion, your time to answer is governed by Federal Rule of Bankruptcy Procedure 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**



FILED
01/13/2025

Clerk, U.S. Bankruptcy Court

**\*\*\* Important Notice \*\*\***

.
**The enclosed Certificate of Service must be filed with the court <u>along with a copy of this summons</u> after service has been made on the parties.**

CSD 3007

# Rule 7001-1

## ADVERSARY PROCEEDINGS – PROCEDURES

(a)     ***General.*** This rule applies to all adversary proceedings and, if ordered by the Court, to contested matters. To the extent that the time periods set forth in this rule conflict with those set forth in the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, or other Local Rules, this rule controls.

(b)     ***Injunctive Relief.*** If a pleading or other paper filed with the Court contains a request for injunctive relief pursuant to Fed. R. Bankr. P. 7065, the title of the pleading or paper must include the words "Injunctive Relief Sought" or the equivalent.

(c)     ***Service.*** Plaintiff must serve the summons issued by the Clerk, the complaint, and a copy of this rule within seven days after the summons is issued as required by Fed. R. Bankr. P. 7004(e). If the initial summons and accompanying papers are not timely served, plaintiff shall promptly request the issuance of an alias summons and serve the alias summons together with the complaint and a copy of this rule. Plaintiff must serve all defendants no later than 28 days after the complaint is filed. If an additional party is thereafter named as a plaintiff or a defendant, plaintiff shall serve a copy of this rule on each additional party within seven days of the date that the additional party is named.

(d)     ***Proof of Service.*** Plaintiff must promptly file a proof of service indicating the service of each summons, the complaint, and this rule on each defendant.

(e)     ***Failure to Effect Service.*** If plaintiff does not complete timely and effective service of the summons and complaint, the Court may dismiss the adversary proceeding for lack of prosecution without further notice or hearing. If plaintiff requires additional time to effect service, plaintiff shall file a motion for extension of time.

(f)     ***Defaults.*** If a defendant has not filed a timely response, plaintiff must seek entry of a Clerk's default of that defendant and move for judgment by default no later than 60 days after the complaint is filed. If plaintiff requires additional time to apply for the entry of default or to move for judgment by default, plaintiff must file a motion for extension of time.

(g)     ***Initial Disclosures.*** Pursuant to Fed. R. Civ. P. 26(f), at or prior to the Meeting of Parties described below, and without any formal discovery requests, each party shall:

(1)     identify in writing the name and, if known, the address and telephone number of each individual with discoverable information relevant to the disputed facts;

(2)     provide copies of or a written description by category and location of all documents that are relevant to the disputed facts;

(3)    provide a written computation of any damages claimed; and

(4)    provide a copy of any insurance agreement that may be available to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

(h)    ***Meeting of Parties.*** At least 14 days prior to the pretrial or status conference, the attorneys for the parties, or the parties (if not represented by an attorney), must meet (the "Meeting of Parties") to discuss:

(1)    the parties' claims and defenses;

(2)    the possibility of settlement;

(3)    the initial disclosures required in section (g) above; and

(4)    a discovery plan as required by Fed. R. Civ. P. 26(f). Unless otherwise ordered by the Court, the parties may orally announce their discovery plan at the pretrial or status conference and need not file a written report.

(i)    ***Pretrial or Status Conference.*** The Court will conduct a pretrial or status conference at any time after a responsive pleading is filed but, in any event, approximately 90 days after the complaint is filed. The parties may not introduce testimony or documentary evidence at the pretrial or status conference. The Court, however, may consider relevant undisputed facts, affidavits offered without objection from the opposing parties, judicial notice items, and admissions made during the pretrial or status conference by parties either directly or through counsel.

(j)    ***Discovery.***

(1)    ***General.*** Parties should be familiar with the Local Rules regarding discovery, including Local Rules 7026-1, 7026-2, 7030-1, 7033-1, and 7037-1.

(2)    ***Commencement of Discovery.*** Absent leave of Court, discovery may not commence until the conclusion of the Meeting of Parties.

(3)    ***Discovery Deadline.*** Parties must complete discovery no later than seven days before the trial date except that the parties may complete previously scheduled depositions up to the trial date.

(4)    ***Discovery Disputes.*** If a discovery dispute occurs, the parties must first confer in good faith to attempt to resolve the issues, as required by Fed. R. Civ. P. 37(a)(1), as incorporated by Fed. R. Bankr. P. 7037. If the parties are unable to resolve the dispute, any party may request a telephone conference with the Court so that the Court may render an informal, preliminary ruling on the discovery dispute, without prejudice to the right of any party to file a formal motion.

(5)     ***Discovery Papers Shall Not Be Filed with the Court.*** Consistent with Fed. R. Civ. P. 5, as incorporated by Fed. R. Bankr. P. 7005, disclosures under Fed. R. Civ. P. 26(a)(1) or (2) and the following discovery responses and requests must not be filed with the Court until they are used in the case or proceeding or the Court orders filing:  depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admissions.

(k)     ***Motions.***

(1)     ***General.*** A motion filed with the Court must request only one form of relief unless the request seeks alternative forms of relief under the same provision of the Bankruptcy Code or Federal Rules of Bankruptcy Procedure.

(2)     ***Format.*** All motions, responses, and replies must comply with the Court's Style Guide posted on the Court's website, [www.flmb.uscourts.gov](www.flmb.uscourts.gov). Papers shall be double spaced and, where appropriate, include a legal memorandum containing argument and citations of authorities.

(3)     ***Page Limits.*** Absent leave of Court, all motions, responses, replies, and supporting memoranda must not exceed ten pages in length. Proofs of service, properly attached and identified exhibits, and the signature block of counsel are not considered for purposes of calculating page limits. If any paper violates this subsection (k), the Court may, *sua sponte* or upon motion of a party, strike the subject paper.

(4)     ***Motions Required to Be Served Using the Court's Negative Notice Procedures.*** The following motions must be served using the negative notice procedures of Local Rule 2002-4:

(A)     motions to dismiss and other motions under Fed. R. Bankr. P. 7012;

(B)     motions to amend pleadings;

(C)     motions regarding joinder or substitution of parties;

(D)     motions for leave to intervene;

(E)     motions to abstain;

(F)     motions related to discovery;

(G)     motions for attorney's fees or costs under Fed. R. Bankr. P. 7054; and

(H)     motions under Fed. R. Bankr. P. 9023 and 9024.

The negative notice legend must provide for a 14-day response period. The moving party may file a reply, if desired, no later than seven days after the response is filed.

(5)  ***Emergency Motions.*** The Court will, in its discretion, consider emergency motions at any time. Emergency motions must comply with Local Rule 9013-1(d) and shall be filed using the Emergency Matters Notification Procedure on the Court's website, www.flmb.uscourts.gov.

(6)  ***Motions to Determine if the Bankruptcy Court Has Authority to Enter Final Orders or Judgments.*** Under 28 U.S.C. § 157(b), the Bankruptcy Court does not have jurisdiction to enter final orders or judgments on claims (A) that are non-core or (B) that are statutorily core but which (i) involve state law claims that arise independently of the Bankruptcy Code and (ii) that are not part of the claims allowance process. A party who seeks a determination that the Bankruptcy Court does not have jurisdiction to enter final orders or judgments on any issue raised in the adversary proceeding shall file a motion for such determination no later than the date set for filing a response to the complaint. A party who fails to timely file such a motion is deemed to have consented to the Bankruptcy Court's entry of final orders and judgments in the proceeding. However, a party's failure to timely file such a motion does not constitute a waiver of that party's right to appeal under 28 U.S.C. § 158.

(7)  ***Motions for Summary Judgment.*** Unless the Court orders otherwise, motions for summary judgment must be filed no later than 60 days prior to trial. The Court may or may not set a hearing on the motion for summary judgment. Absent order of the Court, the trial will proceed as scheduled even if a motion for summary judgment is pending.

(l)  ***Pretrial Disclosures of Witnesses and the Use of Depositions.*** Fed. R. Civ. P. 26(a)(3) (except with respect to time limits) governs pretrial disclosures regarding witnesses and use of depositions. Parties must file and exchange names, telephone numbers, and addresses for witnesses, and any designations of depositions at least 28 days before trial. Objections to the use of depositions must be filed within 14 days of the disclosure. Parties must confer on any factual or evidentiary stipulations prior to trial.

(m)  ***Joint Stipulation of Undisputed Facts.*** The parties must meet in person or by video to prepare a joint stipulation of undisputed facts and exhibits that may be admitted into evidence without objection. The stipulation must be filed no later than seven days before the date set for trial.

(n)  ***Exhibits.***

(1)  ***Exhibits to Be Filed and Exchanged via CM/ECF.*** Parties must prepare exhibits in compliance with Local Rule 9070-1 and shall file and exchange exhibits no later than seven days before the date set for trial.

(2)  ***Self-Authentication of Records of Regularly Conducted Activity.*** A party who intends to rely upon the self-authentication procedures of Fed. R. Evid. 902(11) or (12) to introduce into evidence records of regularly conducted activities under Fed. R. Evid. 803(6) shall, within at least 28 days before trial, file with the Court and serve on other parties the written declaration required by Fed. R. Evid. 902(11) or (12) and a copy of all records sought to be admitted.

(3)     ***Objections to Admissibility of Exhibits.*** Written objection to the admission of an exhibit into evidence on the grounds that the exhibit (A) lacks authentication or (B) does not qualify as an exception to the hearsay rule as a record of a regularly conducted activity under Fed. R. Evid. 803(6) must be filed before the close of business on the second day before trial or the objection will be deemed waived.

(o)     ***Expert Witness Testimony.*** Unless the Court orders otherwise, a party who wishes to offer expert testimony at trial shall comply with the requirements of Fed. R. Civ. P. 26(a)(2).

(p)     ***Stipulations.*** All stipulations of the parties shall be made in writing, signed, and promptly filed with the Court.

(q)     ***Supplementation of Disclosures.*** Parties are under a duty to supplement or correct their Initial Disclosures and their Pretrial Disclosures in accordance with Fed. R. Civ. P. 26(e).

(r)     ***Sanctions.*** Failure to comply with all requirements of this rule may result in the imposition of sanctions that could include the striking of a party's pleading or the denial of the right to introduce evidence or witness testimony.

(s)     ***Settlements.*** Pursuant to Local Rule 9019-1, parties shall immediately notify the Court of any settlement and promptly file and serve a motion to approve the compromise in the debtor's main case, not in the adversary proceeding. If the complaint asserts claims under 11 U.S.C. § 523 only, a motion to approve the compromise is not necessary. However, if desired, the parties may seek approval of the settlement by filing a motion in the adversary proceeding.

---

### *Notes of Advisory Committee*

### *2024 Amendment*

The amendments to section (k) extend the ten-page limit to all motions, responses, replies and supporting memoranda filed with the Court and remove motions for summary judgment from the Court's negative notice procedures. New section (m) conforms the rule to the Court's current practices and form orders regarding joint stipulations of fact to be submitted before trial. Other changes are stylistic. This amended rule is effective August 15, 2024.

### *2019 Amendment*

The amendment to section (k)(4) specifies the types of motions that are required to filed using the Court's negative notice procedures. Amended section (m)(3) provides that written objection to the admission of an exhibit into evidence on the grounds that the exhibit (a) lacks authentication or (b) does not qualify as an exception to the hearsay rule as a record of a regularly conducted activity under Fed. R. Evid. 803(6) must be filed before the close of business on the second day before trial or the objection will be deemed waived. Revised section (k)(4)

specifies the types of motions that are required to be filed using negative notice procedures. This amended rule is effective July 1, 2019.

***2017 Amendment***

This rule is revised to require that pleadings or other papers requesting injunctive relief so state in the title. And, consistent with Fed. R. Civ. P. 5, the rule states that discovery papers must not be filed with the Court. Section (k)(6) is revised to more clearly explain that the Bankruptcy Court lacks jurisdiction to enter a final order or judgment in cases that are non-core or that are statutorily core but involve state law claims, as explained by the Supreme Court in *Stern v. Marshall,* 564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011). Other amendments are stylistic. This amendment to the rule is effective July 1, 2017.

***2016***

This new rule incorporates the provisions of archived Administrative Order FLMB-2014-10 "Administrative Order Prescribing Procedures for Adversary Proceedings." In addition, section (f)(4) regarding pretrial disclosures is now consistent with Fed. R. Civ. P. 26(f). The rule also clarifies the requirement that motions in adversary proceedings be filed and served using the negative notice procedures of Local Rule 2002-4. This new rule is effective July 1, 2016.

## CERTIFICATE OF SERVICE

I, _____Raye C. Elliott_____ , certify that I am, and at all times during the service of process was,
     (name)

not less than 18 years of age and not a party to the matter concerning which service of process was made.
I further certify that the service of this summons and a copy of the complaint and a copy of Local Rule 7001-1
was made __January 21, 2025__ by:
   (date)

[X] Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

Velanos Principal Capital, Inc., 4695 MacArthur Court, Suite 1100, Newport Beach, CA 92660
Velanos Principal Capital, Inc. c/o Joshua Wearmouth, its Chief Executive Officer,
20101 SW Cypress Street, Newport Beach, CA 92660

[ ] Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

[ ] Residence Service: By leaving the process with the following adult at:

[ ] Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail
addressed to the following officer of the defendant at:

[ ] Publication: The defendant was served as follows: [Describe briefly]

[ ] State Law: The defendant was served pursuant to the laws of the State of _____
as follows: [Describe briefly]
                  (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

_____January 21, 2025_____   _____/s/ Raye C. Elliott_____
Date              Signature

| Print Name | Raye C. Elliott, Esq. Akerman LLP |
|---|---|
| Business Address | 401 East Jackson Street, Suite 1700 |
| City  Tampa | State  FL  Zip  33602 |

# EXHIBIT B

80188737;1

[Dclkdfta] [ENTRY OF DEFAULT]

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:                                     Case No. 3:24−bk−00496−BAJ
                                           Chapter 7
Genie Investments NV Inc.


_____Debtor*_____/

Aaron R. Cohen, Chapter 7 Trustee



          Plaintiff*

vs.                                        Adv. Pro. No. 3:25−ap−00007−BAJ



Velanos Principal Capital, Inc.



_____Defendant*_____/

## **ENTRY OF DEFAULT**

    It appears from the record that Defendant Velanos Principal Capital, Inc. failed to plead or otherwise defend in this cause as required by law and therefore default is entered against the Defendant as authorized by Fed. R. of Bankr. P. 7055.



                          FOR THE COURT
Dated: February 19, 2025   Jose A Rodriguez , Clerk of Court
                          Bryan Simpson United States Courthouse
                          300 North Hogan Street
                          Suite 3−150
                          Jacksonville, FL 32202
                          By: C. Perkins
                          Deputy Clerk


    *All references to "Debtor" shall include and refer to both of the debtors in a case filed jointly by two individuals.

    *All references to "Plaintiff" or "Defendant" shall include and refer to multiple plaintiffs or defendants.

Clerk's Office to Serve

# EXHIBIT C

80188737;1

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC.,                    Case No.: 3:24-bk-00496-BAJ

      Debtor.                                          Chapter 7

_____/

AARON R. COHEN, Chapter 7 Trustee,

      Plaintiff,                                   Adversary No. 3:25-ap-00007-BAJ

v.

VELANOS PRINCIPAL CAPITAL, INC.,

      Defendant.

_____/

**DECLARATION OF AARON R. COHEN, CHAPTER 7 TRUSTEE,**
**IN SUPPORT OF MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

I, Aaron R. Cohen, Chapter 7 Trustee, hereby declare:

1.     I am the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Genie Investments NV Inc. (the "Debtor"), over the age of 18, and make this Declaration based upon my own personal knowledge.

2.     On February 21, 2024 (the "Petition Date"), Genie Investments NV Inc. (the "Debtor") filed a Voluntary Petition for Relief (Doc. 1) under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, in the case styled *In re Genie Investments NV Inc.*, Case No: 3:24-bk-00496-BAJ (the "Bankruptcy Case").

3.     On August 12, 2024, the Bankruptcy Case was converted to a Chapter 7 liquidation case and I was appointed to administer the Debtor's estate (Doc. 207).

80188806;1

4.      Based upon my and my counsel's investigation of the Debtor, I have learned the following facts.

5.      Defendant, Velanos Principal Capital, Inc. ("Velanos"), is a corporation organized under the Canada Business Corporations Act with its principal place of business located at 120 Adelaide Street West, Suite 2500, Toronto, ON M5H 1T1, Canada. However, according to testimony given in the Arbitration (as defined below) by the principal of Velanos, Joshua Wearmouth ("Wearmouth"), the Velanos office in Canada is a "virtual" office with no one actually present from Velanos at the address and Wearmouth actually resides in Newport Beach, California.

6.      In late 2023, the Debtor initiated an arbitration against Velanos with JAMS styled *Genie Investments NV v. Velanos Principal Capital*, Case No. 5425001617 (the "Arbitration") to recover damages against Velanos.

7.      On May 15, 2024, the Debtor and Velanos entered into a Settlement Agreement and Release of Claims (the "Settlement Agreement") to resolve the claims in the Arbitration, a copy of which is attached hereto and incorporated herein as **Exhibit A**.

8.      The Settlement Agreement provides at paragraph 6 that Velanos would consent to an award in the Arbitration in the amount of $20 million, that the Debtor could apply to any court of competent jurisdiction to confirm the award and that Velanos would not oppose any application for judicial confirmation of the award.

9.      Pursuant to the Settlement Agreement, on May 28, 2024, the JAMS arbitrator entered the arbitration award in the amount of $20 million (the "Award"), a copy of which is attached hereto and incorporated herein as **Exhibit B**.

10.     Velanos has not moved to vacate, modify, or correct the Award.

2

11.     The Award provides at paragraph 2(c) that the Debtor could apply to any court of competent jurisdiction for confirmation of the Award and obtain a judgment against Velanos for the full amount of the Award plus post-judgment interest at the rate of nine percent.

12.     On May 23, 2024, the Debtor filed a Motion to Approve Settlement Agreement Between Genie Investments, NV, Inc. and Velanos Principal Capital (Main Case Doc. 107) which sought this Court's approval of the Settlement Agreement.

13.     After the Bankruptcy Case was converted to Chapter 7, I entered into an Amendment to Settlement Agreement and Release of Claims (the "Amendment") with Velanos to replace the Debtor with myself as Trustee as the party to the Settlement Agreement, a copy of which is attached as **Exhibit C**.

14.     On October 24, 2024, the Court entered its Order approving the Settlement Agreement and Amendment (Main Case Doc. 257).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February __27__, 2025.

_____

Aaron R. Cohen, Chapter 7 Trustee

3

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Settlement Agreement") is entered into effective May 15, 2024 between (1) Genie Investments NV, a Nevada corporation ("Genie"), and (2) Velanos Principal Capital, a business entity registered in Ontario, Canada ("Velanos"), with respect to the following:

    a.   On or about October 21, 2022, Genie and Velanos (individually "Party" and collectively "the Parties") entered into a "Joint Venture Agreement" ("JVA").

    b.   On October 25, 2023, Genie commenced an arbitration proceeding (the "Arbitration") against Velanos with JAMS, seeking a determination that Velanos materially breached the JVA and an award of damages.

    c.   On February 6, 2024, Genie filed a lawsuit in the U.S. District Court for the Middle District of Florida, case number 6:24-cv-00271 (the "Florida Litigation"), in which it asserted claims related to the JVA against multiple defendants other than Genie.

    d.   Genie and Velanos now wish to settle their dispute and resolve both the Arbitration and the Florida Litigation according to the terms set forth below.

NOW, THEREFORE, in consideration of the following mutually agreed covenants and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

    1.  <u>Definitions</u>. For purposes of this Settlement Agreement, the following definitions shall apply:

    A.   "Genie" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

    B.   "Velanos" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

    C.   "Trading Account Interest" refers to Velanos' ownership interest in the account ("Trading Account") described and identified in Section 3 of this Settlement Agreement and **Exhibit B** hereto.

1

2.   <u>Settlement Amount</u>. Velanos shall pay Genie the total sum of Fifteen Million ($15,000,000.00) dollars (the "Settlement Amount"). The Settlement Amount shall be paid to Genie in ten installments ("Installment Payments"), as follows:

A.   The first Installment Payment shall be completed within two (2) business days of the effective date of the Settlement Agreement, in the amount of fifty thousand dollars ($50,000.00).

B.   The second Installment Payment shall be completed on or before June 30, 2024, in the amount of five hundred thousand dollars ($500,000.00).

C.   The third Installment Payment shall be completed on or before September 30, 2024, in the amount of one million dollars ($1,000,000.00).

D.   The fourth Installment Payment shall be completed on or before December 31, 2024, in the amount of two million dollars ($2,000,000.00).

E.   The fifth Installment Payment shall be completed on or before March 31, 2025, in the amount of two million dollars ($2,000,000.00).

F.   The sixth Installment Payment shall be completed on or before June 30, 2025, in the amount of two million dollars ($2,000,000.00).

G.   The seventh Installment Payment shall be completed on or before September 30, 2025, in the amount of two million dollars ($2,000,000.00).

H.   The eighth Installment Payment shall be completed on or before December 31, 2025, in the amount of two million dollars ($2,000,000.00).

I.   The ninth Installment Payment shall be completed on or before March 31, 2026, in the amount of two million dollars ($2,000,000.00).

J.   The tenth Installment Payment shall be completed on or before June 30, 2026, in the amount of one million four hundred and fifty thousand dollars ($1,450,000.00).

Unless otherwise instructed by Genie in accordance with the requirements set forth below, Velanos shall direct all Installment Payments to the account (the "Recipient Account") identified in **Exhibit A** to this Settlement Agreement. At any time, Genie may, at its sole discretion, designate a different Recipient Account by providing Velanos with written notice identifying the alternate Recipient Account at least fifteen (15) business days before the Installment Payment's due date.

An Installment Payment will be considered completed as of the time it is received in the Recipient Account, as reflected in the records of the bank where the Recipient Account is held. An Installment Payment shall be deemed timely completed if it is received in the Recipient Account prior to 11:59 PM Central time on its due date.

3.   <u>Confidential Trading Account Information; Immediate Disclosure of Account Documents Upon Event of Default</u>. Concerning the Trading Account and Trading Account Interest, Velanos represents and warrants that its owner and CEO, Joshua Wearmouth, has duly executed the

2

affidavit attached as **Exhibit B** to this Settlement Agreement with full authority to do so. Velanos further represents and agrees that:

A. Velanos is the sole owner of the Trading Account Interest.

B. The present principal value of the Trading Account Interest is at least $5,000,000.

C. Velanos has provided  its legal counsel with unredacted copies of documentation (collectively, "Account Documents") concerning the Trading Account and the Trading Account Interest, including, but not limited to: (i) any and all agreements showing Velanos' ownership share in the Trading Account, (ii) any and all agreements governing activity in or administration of the Trading Account, (iii) statements created by or obtained from the showing all activity in the Trading Account since its formation, and (iv) such other documents as necessary to give the holder of the Account Documents all information necessary to locate the Trading Account, accurately assess the value of the Trading Account Interest, and understand any salient restrictions on the ability of the owner(s) of the Trading Account Interest to access the principal and profits therein.

D. Velanos agrees to supplement the information and documentation it has provided to its legal counsel pursuant to Section 3(C) of this Settlement Agreement either on or before the due date for each Installment Payment or more frequently, in the event of any material change the terms governing the Trading Account or of any communication from, or public statement by, the entity administering the Trading Account indicating that the Trading Account will or may be closed during the term of this Settlement Agreement.

E. Velanos authorizes and instructs its legal counsel to hold the Account Documents in trust during the term of this Settlement Agreement. Upon the occurrence of any Event of Default under this Settlement Agreement, however, Genie shall have the right to request and immediately obtain from Velanos' legal counsel all Account Documents. Notwithstanding any obligations to the contrary, Velanos authorizes and instructs its legal counsel to make immediate delivery of the Account Documents to Genie, and to provide Genie any other documents or information reasonably necessary for Genie to enforce the arbitration award and/or judicial confirmation described in Section 6 of this Settlement Agreement, upon the occurrence of any Event of Default.

F. If, during the term of this Settlement Agreement, the legal counsel identified herein ceases to represent Velanos in connection with this matter, then Velanos shall immediately: (i) engage substitute legal counsel, (ii) provide Genie written notice of the change in legal counsel and the identity of Velanos' substitute legal counsel, and (iii) authorize, instruct, and equip its substitute legal counsel to perform each of the duties described in this Section.

G. The Parties agree that failure to comply fully and timely with any portion of this Section shall result in additional damages to Genie, for which Velanos shall immediately be liable to Genie in the amount of one hundred thousand dollars ($100,000.00). This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from

3

a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

4.  Genie's Release of Velanos. Subject to the conditions set forth in this Settlement Agreement, Genie hereby releases and forever discharges Velanos from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA, including but not limited to all claims that were or could have been asserted in the Arbitration, *provided, however*:

A.  This release shall not apply to claims arising out of the enforcement of this Settlement Agreement.

B.  Genie's release of any rights, claims, causes of action, damages, liabilities or demands, whether in law or in equity, against Velanos shall be of no force and effect until the successful completion of all Installment Payments contemplated by this Settlement Agreement.

C.  Any Event of Default by Velanos shall void the release set forth in this paragraph.

5.  Velanos' Release of Genie. Velanos hereby releases and forever discharges Genie from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits, or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA.

6.  Consent Award in Arbitration and Judicial Confirmation Thereof. The Parties agree that, within three (3) business days of the effective date of this Settlement Agreement, they will jointly submit and request entry of a proposed Consent Award pursuant to Rule 28(c) of the Comprehensive Arbitration Rules & Procedures of JAMS Arbitrators and Arbitration Services. The Consent Award submitted by the Parties is attached as **Exhibit C** to this Settlement Agreement and, in pertinent part, states that Genie is awarded damages totaling twenty million dollars ($20,000,000.00), which amount is due and payable by Velanos within fifteen (15) calendar days of the Consent Award's entry.

A.  Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

B.  Velanos agrees not to oppose or challenge any such application by Genie for judicial confirmation of the arbitration award. Violation of this subparagraph by Velanos shall result in additional damages to Genie, for which Velanos shall be immediately liable to Genie in the amount of one million dollars ($1,000,000.00), plus interest accruing at an annual rate of nine percent (9.0%) from the date of the violation. This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of

4

Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

C. Genie agrees that it will not seek to collect on the arbitration award, or on any judgment confirming the arbitration award, prior to either (i) the occurrence of any Event of Default or (ii) an indication by Velanos, through either words or actions, that an Event of Default is imminent.

D. If the arbitrator in the Arbitration refuses to enter an Award that is identical or substantially identical in substance to the proposed Consent Order submitted by the Parties, then the Parties shall have seven (7) calendar days from the date on which JAMS notified the Parties of that fact to reach a mutually agreeable amendment of this Settlement Agreement. If they are unable to do so within that time, then this Settlement Agreement shall have no further force or effect.

7. <u>Dismissal of Florida Litigation</u>. No later than three (3) business days after the receipt of the second installment payment, Genie will file a Motion to Dismiss the Florida Litigation without prejudice. Velanos agrees to consent to that motion and to take no action to oppose or contest the motion or to delay the Court's action regarding it.

8. Genie agrees that it will not, prior to the occurrence or reasonable anticipation of any Event of Default by Velanos, make contact in any manner whatsoever with any person or entity whom Genie knows to be a partner, asset holder, bank officer, escrow officer, or paymaster of Velanos, with the exception of any persons or entities with whom Genie, its principals, or its representatives had a prior business relationship, for the purposes of obtaining information about or interfering with any of Velanos' existing or prospective business relationships.

9. <u>Events of Default</u>. For purposes of this Settlement Agreement, "Events of Default" include the following:

A. Failure of Velanos to make any Installment Payment when due.

B. Failure of Velanos to perform or observe any of Velanos' covenants or agreements contained in this Settlement Agreement.

C. The depletion of the principal amount of Velanos' ownership share in the Trading Account below five million dollars ($5,000,000.00) at any time before Velanos' satisfaction in full of all of the obligations imposed on it by this Settlement Agreement, regardless of whether such depletion results from any action of failure to act by Velanos or from any external factor, including trading losses, market forces, or the action or inaction of any third party or parties.

D. Failure of Velanos to comply with every aspect of Paragraph 11 ("Security Interest") of this Settlement Agreement.

5

E.  The sale or other transfer by Velanos of all or any material part of its property or assets except in the usual and ordinary course of the operation of its business; or a change in the general character, or suspension of any significant part, of Velanos' business.

F.  Actions by or on behalf of Velanos to: (1) make an assignment for the benefit of creditors or petition or apply to any tribunal for the appointment of a custodian, receiver, or trustee for it or a substantial part of its assets, (2) commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, (3) have any such petition or application filed or any such proceeding commenced against it that is not dismissed within thirty (30) days, (4) indicate, by any act or intentional and purposeful omission, its consent to, approval of or acquiescence in any such petition, application, proceeding or order for relief or the appointment of a custodian, receiver or trustee for it or a substantial part of its assets, or (5) suffer any such custodianship, receivership or trusteeship that continues undischarged for a period of thirty (30) days or more.

G.  Entry against Velanos of a judgment or decree in excess of Fifty Thousand Dollars ($50,000) that becomes non-appealable and remains undischarged, unsatisfied by insurance or otherwise, and unstayed for more than thirty (30) days.

H.  The existence of a default or an event that, with the giving of notice (1) would constitute a default, under any other indebtedness of Velanos, for borrowed money or (2) would cause (or would permit any holder of such indebtedness or trustee to cause) such indebtedness, or a portion thereof in an aggregate amount exceeding Fifty Thousand Dollars ($50,000.00), to become due prior to its stated maturity or prior to its regularly scheduled dates of payment.

I.  Violation by Genie of Paragraph 8 of this Settlement Agreement.

10.  <u>Default</u>. Upon the occurrence of any "Event of Default," as described in Paragraph 9 of this Settlement Agreement:

A.  The entire amount of the Consent Award and any court judgment confirming that award, including all accrued post-judgment interest thereunder, and less the total amount of Installment Payments completed as of the Event of Default, shall, without any prior notice, presentment, or demand, become immediately due and payable in full.

B.  Genie shall immediately have the right to take any and all legal action it deems proper to enforce the Consent Award and/or any court judgment confirming that award.

C.  Genie shall immediately have the right to take any and all legal action it deems proper, including but not limited to reinstating the Florida Litigation.

D.  Genie shall be entitled to recover any and reasonable attorney's fees, costs, and expenses that it reasonably incurs as a result of Velanos challenging or contesting any action taken by Genie based in furtherance of the rights created under this Paragraph, absent a ruling by a court of competent jurisdiction that Velanos' challenge or contest of such action is valid.

11. <u>Security Interest</u>. As security for the prompt and full satisfaction of the outstanding balance of all sums due under this Settlement Agreement or under the Consent Award, Velanos agrees that Genie shall have, and Velanos hereby grants and pledges to Genie, a security interest in all: accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, money, insurance and insurance claims, supporting obligations, and all other personal and fixture property, whether governed by Article 9 of the Uniform Commercial Code ("UCC") or other law wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "Collateral").

A. In addition to all rights and remedies given to Genie by this Settlement Agreement, Velanos and Genie agree that this Settlement Agreement constitutes a security agreement under the UCC, and that Genie shall have all the rights and remedies of a secured party thereunder.

B. Velanos agrees that it shall preserve and protect Genie's security interest in the Collateral and that it shall not, without Genie's prior written consent, grant or create or permit to attach or exist any mortgage, security interest, lien, judgment, or other encumbrance of or in the Collateral or any portion thereof, other than the security interest provided for in this Settlement Agreement.

C. Velanos agrees to provide from time to time at Genie's reasonable request such additional redacted documents or instruments, for Genie to perfect and maintain its security interest in the Collateral. Velanos consents to Genie filing or causing to be filed or recorded, such instruments, documents, or notices, including assignments, financing statements, and continuation statements as Genie may deem necessary or advisable from time to time in order to perfect, to continue perfected, and to preserve the priority of the lien and security interest in the Collateral granted pursuant to this Settlement Agreement.

12. <u>Entire Agreement; No Parol Evidence</u>. This Settlement Agreement is a complete integration of the Parties' agreement and constitutes the entire agreement between them with respect to the subject matter hereof. This Settlement Agreement supersedes any and all other oral or written communications, representations, understandings, agreements, negotiations and discussions between the Parties and their attorneys. No parol evidence shall be admissible to interpret, explain, vary, or supplement this Settlement Agreement.

13. <u>Modification and Waiver</u>. No provision of this Settlement Agreement may be changed, altered, or modified except in writing signed by the Parties. The failure of either Party to enforce any provision of this Settlement Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Settlement Agreement thereafter. No waiver of any term or right in this Settlement Agreement shall

be effective unless set forth in writing and signed by an authorized representative of the waiving Party.

14. Severability. If any term of this Settlement Agreement is determined, either by a court of lawful jurisdiction or by the parties' mutual agreement, to be invalid, illegal, or otherwise unenforceable, then

    A.  The Parties shall use all reasonable efforts to negotiate in good faith to amend the term to eliminate any such invalidity, illegality, or unenforceability to the extent practically possible, taking into full account their original intent when entering into this Agreement in the first instance, and

    B.  The remaining provisions hereof shall continue in full force and effect.

15. Pendency of Bankruptcy Proceedings. The Parties acknowledge that this Settlement Agreement is contingent upon the approval of this Settlement Agreement and confirmation of the Genie Chapter 11 plan in case number 3:24-bk-00496-BAJ pending in the Middle District of Florida Jacksonville Division of the United States Bankruptcy Court. To the extent that there is a Trustee appointed in that bankruptcy case, the Settlement Agreement is not approved by the Court, and/or Genie's Chapter 11 Plan is not confirmed with the essential terms of this Settlement Agreement incorporated into such confirmation, then the Settlement Agreement shall be voided as to any remaining obligations by all parties.

16. Choice of Law and Venue. This Settlement Agreement shall be governed in all respects by the laws of the state of New York, including as to interpretation, enforceability, validity, and construction. The Parties also agree that the venue for any legal action to enforce the provisions of this Settlement Agreement, or any document executed in connection with this Settlement Agreement, shall be in the state of New York. The Parties agree they will not contest the choice of law and venue provisions in this Section.

17. Construction. Because this Settlement Agreement was the result of arms-length negotiations between the Parties and their respective attorneys, no party shall be considered the drafter; consequently, the rule of construction that all conflicts and ambiguities should be construed against the drafter shall not be employed in the interpretation of this Settlement Agreement.

18. Attorney's Fees and Costs in Enforcement of the Agreement. If either Party incurs any attorney's fees, costs, or expenses in any proceeding to enforce the terms of this Settlement Agreement or any of the rights provided hereunder, the prevailing Party shall be entitled to recover

its reasonable attorney's fees and any court, arbitration, mediation, or other litigation expenses from the other Party.

19. <u>References to Time</u>. Unless otherwise specified, references to time periods in this Settlement Agreement refer to calendar days.

20. <u>Successors and Assigns</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' successors, assigns, agents, heirs, and personal representatives.

21. <u>Third Parties</u>. This Settlement Agreement shall not confer any rights or remedies upon any third party other than the Parties to this Settlement Agreement and their respective successors, assigns, agents, heirs, and personal representatives. The Parties have not transferred, by assignment or otherwise, any of the claims released in this Settlement Agreement.

22. <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts, all of which shall be considered one instrument, and a copy or facsimile of each will be deemed an original and shall be binding when one or more counterparts have been signed by each of the parties.

23. <u>Advice of Counsel</u>. The Parties acknowledge and represent that they have read this Settlement Agreement in full and understand and voluntarily consent to each of its provisions after having had ample time and opportunity to consult with their respective attorneys concerning the Settlement Agreement. The Parties further acknowledge and represent that they are sophisticated in matters of business and have negotiated this Settlement Agreement at arms' length.

24. <u>Authority to Bind</u>. By signing below the Parties represent that the signatories are authorized to execute this Settlement Agreement on behalf of their respective business entities and that the execution and delivery of this Settlement Agreement are the duly authorized and binding acts of their respective business entities.

25. <u>Non-Disparagement</u>. The Parties hereby understand and agree that the business reputation of each Party is of paramount importance. As a material inducement to the execution of this Settlement Agreement, the Parties agree that they will not make any disparaging comments about each other which is intended to adversely affect either the conduct of the Parties' business or profession, or the Parties' business or professional reputation, which conduct shall include, but not be limited to, business defamation and/or disparagement of professional skill, judgment, and reputation for probity and thrift. This includes, but is not limited to, any disparaging comments that are made available to any third parties via the internet. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

26. <u>Confidentiality.</u> The terms of this Settlement Agreement, including but not limited to the Settlement Payment, are to be held in strict confidence and are not to be disclosed by the Parties to any person with the sole exception of: (1) the Parties' attorneys (2) the Parties' tax advisors and/or accountants, for purposes of tax reporting, regulatory reporting and/or financial planning; (3) as necessary in connection with the Parties' current or future liability insurance and/or any disclosure requirements to which the Parties are subject; (4) as necessary to enforce this Settlement Agreement; and (5) as required or otherwise permitted by law or legal process, including, but not necessarily limited to, communicating with regulatory or law-enforcement authorities, defending

legal or regulatory claims brought against either Party, or asserting legal claims not otherwise prohibited by the terms of this Settlement Agreement. The conveyance of the terms of this Settlement Agreement to third parties as referenced above or as are necessary to contact in connection with subparagraphs 1 through 3 above is conditioned upon such third parties' acceptance of the terms of this Confidentiality provision and that they accept responsibility to keep such terms confidential. Both Parties agree, that prior to such disclosure, they will advise the intended recipient of the confidentiality requirements of this Confidentiality provision and that disclosure of this Settlement Agreement's terms may subject him or her to potential legal action. It shall be considered a breach of this confidentiality provision if the Parties fail to advise any individual to whom a disclosure is made pursuant to this Confidentiality provision of the confidentiality requirements of this Confidentiality provision and if that individual communicates, publishes, publicizes or discloses confidential information to any third party or causes confidential information to be communicated, published, publicized or disclosed to any third party. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

27. <u>Notices and Legal Counsel</u>. Any notices or other communications required by or otherwise necessary to effectuate the terms of this Settlement Agreement shall be delivered to the Parties as set forth below. Each Party agrees to inform the other promptly of any changes to the information below, including any changes to its legal counsel.

> Velanos Principal Capital
> c/o Joshua Wearmouth, CEO
> 120 Adelaide Street West, Suite 2500
> Toronto, Ontario M5H 1T1
> CANADA
> jwearmouth@velanosprincipalcapital.com

> Legal counsel for Velanos Principal Capital
> Boddie & Associates P.C.
> c/o Corey D. Boddie
> 40 Exchange Place, suite 1800
> New York, NY 10005
> corey@boddieassoc.com

> Genie Investments NV
> c/o David Hughes
> 2812 Pat Tillman Drive
> Springfield, Illinois 62711
> dhughes@genieinvestments.com

> Legal counsel for Genie Investments:
> AW Securities Law
> c/o Adam Walker
> 4010 Pennsylvania Ave., Suite 115-10
> Kansas City, Missouri 64111
> adam@awsecuritieslaw.com

In witness whereof, the Parties hereto have executed this Settlement Agreement on the date(s) set forth below.

GENIE INVESTMENTS NV

By:        _David Hughes_____
           David Hughes (May 15, 2024 10:58 CDT)
           David Hughes

Title:     Managing Member_____

Date:      _____

VELANOS PRINCIPAL CAPITAL

By:        _____
           D85D494D21D149B...
           Joshua Wearmouth

Title:     _____

Date:      5/16/2024
           _____

## **EXHIBIT A**

## **RECIPIENT ACCOUNT INFORMATION**

Routing #:     043000096

Acct #:        █████████

Bank info:     PNC BANK
               500 First Avenue
               Mailstop: P7-PFSC-03-W
               Pittsburgh, PA 15219

**EXHIBIT B**

## AFFIDAVIT OF JOSHUA WEARMOUTH

Joshua Wearmouth, the CEO of Velanos Principal Capital Inc., a Canadian corporation, being duly sworn, depose and say:

    1.     I am Joshua Wearmouth, the CEO of Velanos Principal Capital, Inc., a Canadian corporation ("Velanos").

    2.     As CEO of Velanos, I attest that I have given our attorney Corey D. Boddie all relevant, unredacted documentation concerning the Velanos account which is currently being traded on the Forex platform on May 13, 2024.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

    Executed on this 13th day of May 2024.

Joshua Wearmouth,
CEO of Velanos Principal Capital Inc.

*Sworn to before me*
*This* 13 *day of*
May , 2024

COREY DELON BODDIE
NOTARY PUBLIC. STATE OF NEW YORK
Registration No. 02BO6282620
Qualified in New York County
My Commission Expires: May 28, 2025

**EXHIBIT C**


GENIE INVESTMENTS NV,

     Claimant,

v.                                                             JAMS Ref No. 5425001617

VELANOS PRINCIPAL CAPITAL, INC.,


     Respondent.

---

## <u>JOINT MOTION FOR ENTRY OF CONSENT AWARD</u>

Claimant Genie Investments NV (Genie) and Respondent Velanos Principal Capital (Velanos) have executed a settlement agreement intended to resolve all claims asserted in this matter. As a condition of that settlement agreement (attached to this motion as **<u>Exhibit A</u>**) and pursuant to Rule 28(c) of JAMS Comprehensive Arbitration Rules & Procedures, Genie and Velanos move jointly for entry of a consent award setting forth the following terms in such form and with such other terms as the arbitrator deems necessary and appropriate to effectuate the Parties' settlement agreement:

1.     On or about October 21, 2022, the Parties entered into a "Joint Venture Agreement" (JVA).

2.     On October 25, 2023, Genie commenced this proceeding, identified as JAMS Ref No. 5425001617 (the Arbitration) against Velanos, seeking both a determination that Velanos materially breached the JVA and an award of compensatory and other damages.

3.     During this Arbitration, the Parties completed the discovery permitted by the rules and scheduling order governing this Arbitration. In addition, the Parties briefed multiple motions, including a dispositive motion submitted by the Claimant.

**EXHIBIT C**

4.      Before concluding the Arbitration, the Parties reached and executed a settlement agreement intended to resolve, among other things, all claims and defenses asserted herein.

5.      As a condition of that settlement agreement, the Parties agreed to consent to an award in this Arbitration stating (a) that Velanos breached the JVA and (b) that Genie is awarded damages for that breach in the amount of twenty million dollars ($20,000,000.00).

6.      Throughout the entirety of this Arbitration, each Party has been represented by an attorney and has received legal counsel and advice concerning potential outcomes if this Arbitration were to end in a determination on the merits, whether based on a dispositive motion or full evidentiary hearing. The instant motion reflects the Parties' respective decisions to resolve the dispute at issue in this Arbitration through settlement on the terms set forth herein, rather than through a determination by the arbitrator.

7.      The damages awarded to Genie are due and payable by Velanos within fifteen (15) calendar days following entry of this award.

8.      Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

9.      Each Party shall bear one half of all fees assessed by JAMS in connection with this Arbitration, except to the extent that any fee, penalty, or other charge assessed by JAMS is the result of either Party's lateness, delay, or noncompliance with any rule or order governing this Arbitration, in which case the Party whose lateness, delay, or noncompliance resulted in a fee, penalty, or other charge shall be fully responsible for paying it.

**EXHIBIT C**

Respectfully submitted,

_____

Adam Walker
AW Securities Law
4050 Pennsylvania Ave., Suite 115-10
Kansas City, Missouri 64111

*Counsel for Genie Investments NV*

_____

Corey D. Boddie
Boddie & Associates P.C.
40 Exchange Place, suite 1800
New York, NY 10005
corey@boddieassoc.com

*Counsel for Velanos Principal Capital*

# Exhibit B

JAMS ARBITRATION
REF. NO.: 5425001617

GENIE INVESTMENT NV,

      Claimant,

     -against-

                                   JOINT MOTION FOR
                                   ENTRY OF CONSENT
                                   AWARD

VELANOS PRINCIPAL CAPITAL,

      Respondent.

**ORDER 5:**

Claimant Genie Investments NV (Genie) and Respondent Velanos Principal Capital (Velanos), parties to an October 21, 2022, Joint Venture Agreement (JVA), have executed a Settlement Agreement (annexed hereto as Exhibit A, inclusive of exhibits thereto) in this October 26, 2023, arbitration, agreeing that Velanos has breached the JVA, resolving all claims and defenses asserted in this proceeding and providing for releases should the Settlement Agreement be finalized. See Exhibit A, annexed hereto. As a condition of the Settlement Agreement and pursuant to Rule 28(c) of JAMS Comprehensive Arbitration Rules & Procedures, Genie and Velanos, jointly, have moved for entry of a Consent Award in the event of a default of the Settlement Agreement by Velanos.

ACCORDINGLY, the following is ORDERED:

(1) Each Party shall bear one-half of all fees assessed by JAMS in connection with this Arbitration, except to the extent that any fee, penalty, or other charge

assessed by JAMS is the result of either Party's lateness, delay, or noncompliance with any rule or order governing the Arbitration, in which case the Party whose lateness, delay, or noncompliance resulted in a fee, penalty, or other charge shall be fully responsible for paying it;

(2) A CONSENT AWARD, hereby, is issued providing:

    (a) Velanos breached the JVA;

    (b) Genie is awarded damages for that breach in the amount of twenty million dollars ($20,000,000.00);

    (c) Genie, at its sole discretion, may apply to any court of competent jurisdiction for confirmation of this Consent Award and obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually; and

    (d) Within fifteen (15) calendar days from the entry of the Consent Award, Velanos will pay Genie damages in the amount of twenty million dollars ($20,000,000.00).

Dated: May 28, 2024

HON. SHIRLEY WERNER KORNREICH (ret.)
Arbitrator

## <u>SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS</u>

This Settlement Agreement and Release of Claims (the "Settlement Agreement") is entered into effective May 15, 2024 between (1) Genie Investments NV, a Nevada corporation ("Genie"), and (2) Velanos Principal Capital, a business entity registered in Ontario, Canada ("Velanos"), with respect to the following:

      a.  On or about October 21, 2022, Genie and Velanos (individually "Party" and collectively "the Parties") entered into a "Joint Venture Agreement" ("JVA").

      b.  On October 25, 2023, Genie commenced an arbitration proceeding (the "Arbitration") against Velanos with JAMS, seeking a determination that Velanos materially breached the JVA and an award of damages.

      c.  On February 6, 2024, Genie filed a lawsuit in the U.S. District Court for the Middle District of Florida, case number 6:24-cv-00271 (the "Florida Litigation"), in which it asserted claims related to the JVA against multiple defendants other than Genie.

      d.  Genie and Velanos now wish to settle their dispute and resolve both the Arbitration and the Florida Litigation according to the terms set forth below.

NOW, THEREFORE, in consideration of the following mutually agreed covenants and other valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

    1.  <u>Definitions</u>. For purposes of this Settlement Agreement, the following definitions shall apply:

      A.  "Genie" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

      B.  "Velanos" means and includes its predecessors, successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, shareholders, attorneys, agents, representatives and heirs, and any person or entity who may claim by or through any of them.

      C.  "Trading Account Interest" refers to Velanos' ownership interest in the account ("Trading Account") described and identified in Section 3 of this Settlement Agreement and **Exhibit B** hereto.

1

2. <u>Settlement Amount</u>. Velanos shall pay Genie the total sum of Fifteen Million ($15,000,000.00) dollars (the "Settlement Amount"). The Settlement Amount shall be paid to Genie in ten installments ("Installment Payments"), as follows:

A. The first Installment Payment shall be completed within two (2) business days of the effective date of the Settlement Agreement, in the amount of fifty thousand dollars ($50,000.00).

B. The second Installment Payment shall be completed on or before June 30, 2024, in the amount of five hundred thousand dollars ($500,000.00).

C. The third Installment Payment shall be completed on or before September 30, 2024, in the amount of one million dollars ($1,000,000.00).

D. The fourth Installment Payment shall be completed on or before December 31, 2024, in the amount of two million dollars ($2,000,000.00).

E. The fifth Installment Payment shall be completed on or before March 31, 2025, in the amount of two million dollars ($2,000,000.00).

F. The sixth Installment Payment shall be completed on or before June 30, 2025, in the amount of two million dollars ($2,000,000.00).

G. The seventh Installment Payment shall be completed on or before September 30, 2025, in the amount of two million dollars ($2,000,000.00).

H. The eighth Installment Payment shall be completed on or before December 31, 2025, in the amount of two million dollars ($2,000,000.00).

I. The ninth Installment Payment shall be completed on or before March 31, 2026, in the amount of two million dollars ($2,000,000.00).

J. The tenth Installment Payment shall be completed on or before June 30, 2026, in the amount of one million four hundred and fifty thousand dollars ($1,450,000.00).

Unless otherwise instructed by Genie in accordance with the requirements set forth below, Velanos shall direct all Installment Payments to the account (the "Recipient Account") identified in **Exhibit A** to this Settlement Agreement. At any time, Genie may, at its sole discretion, designate a different Recipient Account by providing Velanos with written notice identifying the alternate Recipient Account at least fifteen (15) business days before the Installment Payment's due date.

An Installment Payment will be considered completed as of the time it is received in the Recipient Account, as reflected in the records of the bank where the Recipient Account is held. An Installment Payment shall be deemed timely completed if it is received in the Recipient Account prior to 11:59 PM Central time on its due date.

3. <u>Confidential Trading Account Information; Immediate Disclosure of Account Documents Upon Event of Default</u>. Concerning the Trading Account and Trading Account Interest, Velanos represents and warrants that its owner and CEO, Joshua Wearmouth, has duly executed the

affidavit attached as **Exhibit B** to this Settlement Agreement with full authority to do so. Velanos further represents and agrees that:

A. Velanos is the sole owner of the Trading Account Interest.

B. The present principal value of the Trading Account Interest is at least $5,000,000.

C. Velanos has provided  its legal counsel with unredacted copies of documentation (collectively, "Account Documents") concerning the Trading Account and the Trading Account Interest, including, but not limited to: (i) any and all agreements showing Velanos' ownership share in the Trading Account, (ii) any and all agreements governing activity in or administration of the Trading Account, (iii) statements created by or obtained from the showing all activity in the Trading Account since its formation, and (iv) such other documents as necessary to give the holder of the Account Documents all information necessary to locate the Trading Account, accurately assess the value of the Trading Account Interest, and understand any salient restrictions on the ability of the owner(s) of the Trading Account Interest to access the principal and profits therein.

D. Velanos agrees to supplement the information and documentation it has provided to its legal counsel pursuant to Section 3(C) of this Settlement Agreement either on or before the due date for each Installment Payment or more frequently, in the event of any material change the terms governing the Trading Account or of any communication from, or public statement by, the entity administering the Trading Account indicating that the Trading Account will or may be closed during the term of this Settlement Agreement.

E. Velanos authorizes and instructs its legal counsel to hold the Account Documents in trust during the term of this Settlement Agreement. Upon the occurrence of any Event of Default under this Settlement Agreement, however, Genie shall have the right to request and immediately obtain from Velanos' legal counsel all Account Documents. Notwithstanding any obligations to the contrary, Velanos authorizes and instructs its legal counsel to make immediate delivery of the Account Documents to Genie, and to provide Genie any other documents or information reasonably necessary for Genie to enforce the arbitration award and/or judicial confirmation described in Section 6 of this Settlement Agreement, upon the occurrence of any Event of Default.

F. If, during the term of this Settlement Agreement, the legal counsel identified herein ceases to represent Velanos in connection with this matter, then Velanos shall immediately: (i) engage substitute legal counsel, (ii) provide Genie written notice of the change in legal counsel and the identity of Velanos' substitute legal counsel, and (iii) authorize, instruct, and equip its substitute legal counsel to perform each of the duties described in this Section.

G. The Parties agree that failure to comply fully and timely with any portion of this Section shall result in additional damages to Genie, for which Velanos shall immediately be liable to Genie in the amount of one hundred thousand dollars ($100,000.00). This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from

a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

4. <u>Genie's Release of Velanos</u>. Subject to the conditions set forth in this Settlement Agreement, Genie hereby releases and forever discharges Velanos from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA, including but not limited to all claims that were or could have been asserted in the Arbitration, *provided, however*:

    A. This release shall not apply to claims arising out of the enforcement of this Settlement Agreement.

    B. Genie's release of any rights, claims, causes of action, damages, liabilities or demands, whether in law or in equity, against Velanos shall be of no force and effect until the successful completion of all Installment Payments contemplated by this Settlement Agreement.

    C. Any Event of Default by Velanos shall void the release set forth in this paragraph.

5. <u>Velanos' Release of Genie</u>. Velanos hereby releases and forever discharges Genie from any and all liabilities, damages, costs, expenses, contracts, obligations, accounts, torts, causes of action, suits, or claims of every nature, whether known or unknown, contingent or otherwise, or which may accrue in the future, arising from or in consequence of the JVA.

6. <u>Consent Award in Arbitration and Judicial Confirmation Thereof</u>. The Parties agree that, within three (3) business days of the effective date of this Settlement Agreement, they will jointly submit and request entry of a proposed Consent Award pursuant to Rule 28(c) of the Comprehensive Arbitration Rules & Procedures of JAMS Arbitrators and Arbitration Services. The Consent Award submitted by the Parties is attached as **Exhibit C** to this Settlement Agreement and, in pertinent part, states that Genie is awarded damages totaling twenty million dollars ($20,000,000.00), which amount is due and payable by Velanos within fifteen (15) calendar days of the Consent Award's entry.

    A. Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

    B. Velanos agrees not to oppose or challenge any such application by Genie for judicial confirmation of the arbitration award. Violation of this subparagraph by Velanos shall result in additional damages to Genie, for which Velanos shall be immediately liable to Genie in the amount of one million dollars ($1,000,000.00), plus interest accruing at an annual rate of nine percent (9.0%) from the date of the violation. This amount constitutes liquidated damages, and not penalties, and is additional to all other rights of

4

Genie hereunder, including the right to declare an Event of Default. The Parties further acknowledge that (i) the amount of loss or damages likely to result from a violation of this Section is incapable of precise determination, (ii) the amount specified herein bears a reasonable relationship to, and is not plainly or grossly disproportionate to, the loss likely to result from a violation of this Section, and (iii) the Parties have agreed to the liquidated-damages amount because of the uncertainty and presumptive costs of litigating the question of actual damages.

C. Genie agrees that it will not seek to collect on the arbitration award, or on any judgment confirming the arbitration award, prior to either (i) the occurrence of any Event of Default or (ii) an indication by Velanos, through either words or actions, that an Event of Default is imminent.

D. If the arbitrator in the Arbitration refuses to enter an Award that is identical or substantially identical in substance to the proposed Consent Order submitted by the Parties, then the Parties shall have seven (7) calendar days from the date on which JAMS notified the Parties of that fact to reach a mutually agreeable amendment of this Settlement Agreement. If they are unable to do so within that time, then this Settlement Agreement shall have no further force or effect.

7. <u>Dismissal of Florida Litigation</u>. No later than three (3) business days after the receipt of the second installment payment, Genie will file a Motion to Dismiss the Florida Litigation without prejudice. Velanos agrees to consent to that motion and to take no action to oppose or contest the motion or to delay the Court's action regarding it.

8. Genie agrees that it will not, prior to the occurrence or reasonable anticipation of any Event of Default by Velanos, make contact in any manner whatsoever with any person or entity whom Genie knows to be a partner, asset holder, bank officer, escrow officer, or paymaster of Velanos, with the exception of any persons or entities with whom Genie, its principals, or its representatives had a prior business relationship, for the purposes of obtaining information about or interfering with any of Velanos' existing or prospective business relationships.

9. <u>Events of Default</u>. For purposes of this Settlement Agreement, "Events of Default" include the following:

A. Failure of Velanos to make any Installment Payment when due.

B. Failure of Velanos to perform or observe any of Velanos' covenants or agreements contained in this Settlement Agreement.

C. The depletion of the principal amount of Velanos' ownership share in the Trading Account below five million dollars ($5,000,000.00) at any time before Velanos' satisfaction in full of all of the obligations imposed on it by this Settlement Agreement, regardless of whether such depletion results from any action of failure to act by Velanos or from any external factor, including trading losses, market forces, or the action or inaction of any third party or parties.

D. Failure of Velanos to comply with every aspect of Paragraph 11 ("Security Interest") of this Settlement Agreement.

5

E. The sale or other transfer by Velanos of all or any material part of its property or assets except in the usual and ordinary course of the operation of its business; or a change in the general character, or suspension of any significant part, of Velanos' business.

F. Actions by or on behalf of Velanos to: (1) make an assignment for the benefit of creditors or petition or apply to any tribunal for the appointment of a custodian, receiver, or trustee for it or a substantial part of its assets, (2) commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, (3) have any such petition or application filed or any such proceeding commenced against it that is not dismissed within thirty (30) days, (4) indicate, by any act or intentional and purposeful omission, its consent to, approval of or acquiescence in any such petition, application, proceeding or order for relief or the appointment of a custodian, receiver or trustee for it or a substantial part of its assets, or (5) suffer any such custodianship, receivership or trusteeship that continues undischarged for a period of thirty (30) days or more.

G. Entry against Velanos of a judgment or decree in excess of Fifty Thousand Dollars ($50,000) that becomes non-appealable and remains undischarged, unsatisfied by insurance or otherwise, and unstayed for more than thirty (30) days.

H. The existence of a default or an event that, with the giving of notice (1) would constitute a default, under any other indebtedness of Velanos, for borrowed money or (2) would cause (or would permit any holder of such indebtedness or trustee to cause) such indebtedness, or a portion thereof in an aggregate amount exceeding Fifty Thousand Dollars ($50,000.00), to become due prior to its stated maturity or prior to its regularly scheduled dates of payment.

I. Violation by Genie of Paragraph 8 of this Settlement Agreement.

10. <u>Default</u>. Upon the occurrence of any "Event of Default," as described in Paragraph 9 of this Settlement Agreement:

A. The entire amount of the Consent Award and any court judgment confirming that award, including all accrued post-judgment interest thereunder, and less the total amount of Installment Payments completed as of the Event of Default, shall, without any prior notice, presentment, or demand, become immediately due and payable in full.

B. Genie shall immediately have the right to take any and all legal action it deems proper to enforce the Consent Award and/or any court judgment confirming that award.

C. Genie shall immediately have the right to take any and all legal action it deems proper, including but not limited to reinstating the Florida Litigation.

D. Genie shall be entitled to recover any and reasonable attorney's fees, costs, and expenses that it reasonably incurs as a result of Velanos challenging or contesting any action taken by Genie based in furtherance of the rights created under this Paragraph, absent a ruling by a court of competent jurisdiction that Velanos' challenge or contest of such action is valid.

11. <u>Security Interest</u>. As security for the prompt and full satisfaction of the outstanding balance of all sums due under this Settlement Agreement or under the Consent Award, Velanos agrees that Genie shall have, and Velanos hereby grants and pledges to Genie, a security interest in all: accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, money, insurance and insurance claims, supporting obligations, and all other personal and fixture property, whether governed by Article 9 of the Uniform Commercial Code ("UCC") or other law wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "Collateral").

    A.  In addition to all rights and remedies given to Genie by this Settlement Agreement, Velanos and Genie agree that this Settlement Agreement constitutes a security agreement under the UCC, and that Genie shall have all the rights and remedies of a secured party thereunder.

    B.  Velanos agrees that it shall preserve and protect Genie's security interest in the Collateral and that it shall not, without Genie's prior written consent, grant or create or permit to attach or exist any mortgage, security interest, lien, judgment, or other encumbrance of or in the Collateral or any portion thereof, other than the security interest provided for in this Settlement Agreement.

    C.  Velanos agrees to provide from time to time at Genie's reasonable request such additional redacted documents or instruments, for Genie to perfect and maintain its security interest in the Collateral. Velanos consents to Genie filing or causing to be filed or recorded, such instruments, documents, or notices, including assignments, financing statements, and continuation statements as Genie may deem necessary or advisable from time to time in order to perfect, to continue perfected, and to preserve the priority of the lien and security interest in the Collateral granted pursuant to this Settlement Agreement.

12. <u>Entire Agreement; No Parol Evidence</u>. This Settlement Agreement is a complete integration of the Parties' agreement and constitutes the entire agreement between them with respect to the subject matter hereof. This Settlement Agreement supersedes any and all other oral or written communications, representations, understandings, agreements, negotiations and discussions between the Parties and their attorneys. No parol evidence shall be admissible to interpret, explain, vary, or supplement this Settlement Agreement.

13. <u>Modification and Waiver</u>. No provision of this Settlement Agreement may be changed, altered, or modified except in writing signed by the Parties. The failure of either Party to enforce any provision of this Settlement Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Settlement Agreement thereafter. No waiver of any term or right in this Settlement Agreement shall

be effective unless set forth in writing and signed by an authorized representative of the waiving Party.

14. <u>Severability</u>. If any term of this Settlement Agreement is determined, either by a court of lawful jurisdiction or by the parties' mutual agreement, to be invalid, illegal, or otherwise unenforceable, then

    A. The Parties shall use all reasonable efforts to negotiate in good faith to amend the term to eliminate any such invalidity, illegality, or unenforceability to the extent practically possible, taking into full account their original intent when entering into this Agreement in the first instance, and

    B. The remaining provisions hereof shall continue in full force and effect.

15. <u>Pendency of Bankruptcy Proceedings</u>. The Parties acknowledge that this Settlement Agreement is contingent upon the approval of this Settlement Agreement and confirmation of the Genie Chapter 11 plan in case number 3:24-bk-00496-BAJ pending in the Middle District of Florida Jacksonville Division of the United States Bankruptcy Court. To the extent that there is a Trustee appointed in that bankruptcy case, the Settlement Agreement is not approved by the Court, and/or Genie's Chapter 11 Plan is not confirmed with the essential terms of this Settlement Agreement incorporated into such confirmation, then the Settlement Agreement shall be voided as to any remaining obligations by all parties.

16. <u>Choice of Law and Venue</u>. This Settlement Agreement shall be governed in all respects by the laws of the state of New York, including as to interpretation, enforceability, validity, and construction. The Parties also agree that the venue for any legal action to enforce the provisions of this Settlement Agreement, or any document executed in connection with this Settlement Agreement, shall be in the state of New York. The Parties agree they will not contest the choice of law and venue provisions in this Section.

17. <u>Construction</u>. Because this Settlement Agreement was the result of arms-length negotiations between the Parties and their respective attorneys, no party shall be considered the drafter; consequently, the rule of construction that all conflicts and ambiguities should be construed against the drafter shall not be employed in the interpretation of this Settlement Agreement.

18. <u>Attorney's Fees and Costs in Enforcement of the Agreement</u>. If either Party incurs any attorney's fees, costs, or expenses in any proceeding to enforce the terms of this Settlement Agreement or any of the rights provided hereunder, the prevailing Party shall be entitled to recover

its reasonable attorney's fees and any court, arbitration, mediation, or other litigation expenses from the other Party.

19. <u>References to Time</u>. Unless otherwise specified, references to time periods in this Settlement Agreement refer to calendar days.

20. <u>Successors and Assigns</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' successors, assigns, agents, heirs, and personal representatives.

21. <u>Third Parties</u>. This Settlement Agreement shall not confer any rights or remedies upon any third party other than the Parties to this Settlement Agreement and their respective successors, assigns, agents, heirs, and personal representatives. The Parties have not transferred, by assignment or otherwise, any of the claims released in this Settlement Agreement.

22. <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts, all of which shall be considered one instrument, and a copy or facsimile of each will be deemed an original and shall be binding when one or more counterparts have been signed by each of the parties.

23. <u>Advice of Counsel</u>. The Parties acknowledge and represent that they have read this Settlement Agreement in full and understand and voluntarily consent to each of its provisions after having had ample time and opportunity to consult with their respective attorneys concerning the Settlement Agreement. The Parties further acknowledge and represent that they are sophisticated in matters of business and have negotiated this Settlement Agreement at arms' length.

24. <u>Authority to Bind</u>. By signing below the Parties represent that the signatories are authorized to execute this Settlement Agreement on behalf of their respective business entities and that the execution and delivery of this Settlement Agreement are the duly authorized and binding acts of their respective business entities.

25. <u>Non-Disparagement</u>. The Parties hereby understand and agree that the business reputation of each Party is of paramount importance. As a material inducement to the execution of this Settlement Agreement, the Parties agree that they will not make any disparaging comments about each other which is intended to adversely affect either the conduct of the Parties' business or profession, or the Parties' business or professional reputation, which conduct shall include, but not be limited to, business defamation and/or disparagement of professional skill, judgment, and reputation for probity and thrift. This includes, but is not limited to, any disparaging comments that are made available to any third parties via the internet. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

26. <u>Confidentiality.</u> The terms of this Settlement Agreement, including but not limited to the Settlement Payment, are to be held in strict confidence and are not to be disclosed by the Parties to any person with the sole exception of: (1) the Parties' attorneys (2) the Parties' tax advisors and/or accountants, for purposes of tax reporting, regulatory reporting and/or financial planning; (3) as necessary in connection with the Parties' current or future liability insurance and/or any disclosure requirements to which the Parties are subject; (4) as necessary to enforce this Settlement Agreement; and (5) as required or otherwise permitted by law or legal process, including, but not necessarily limited to, communicating with regulatory or law-enforcement authorities, defending

legal or regulatory claims brought against either Party, or asserting legal claims not otherwise prohibited by the terms of this Settlement Agreement. The conveyance of the terms of this Settlement Agreement to third parties as referenced above or as are necessary to contact in connection with subparagraphs 1 through 3 above is conditioned upon such third parties' acceptance of the terms of this Confidentiality provision and that they accept responsibility to keep such terms confidential. Both Parties agree, that prior to such disclosure, they will advise the intended recipient of the confidentiality requirements of this Confidentiality provision and that disclosure of this Settlement Agreement's terms may subject him or her to potential legal action. It shall be considered a breach of this confidentiality provision if the Parties fail to advise any individual to whom a disclosure is made pursuant to this Confidentiality provision of the confidentiality requirements of this Confidentiality provision and if that individual communicates, publishes, publicizes or discloses confidential information to any third party or causes confidential information to be communicated, published, publicized or disclosed to any third party. Violation of this paragraph shall entitle the aggrieved party to actual damages only and shall not constitute an Event of Default.

27. <u>Notices and Legal Counsel</u>. Any notices or other communications required by or otherwise necessary to effectuate the terms of this Settlement Agreement shall be delivered to the Parties as set forth below. Each Party agrees to inform the other promptly of any changes to the information below, including any changes to its legal counsel.

      Velanos Principal Capital
      c/o Joshua Wearmouth, CEO
      120 Adelaide Street West, Suite 2500
      Toronto, Ontario M5H 1T1
      CANADA
      jwearmouth@velanosprincipalcapital.com

      Legal counsel for Velanos Principal Capital
      Boddie & Associates P.C.
      c/o Corey D. Boddie
      40 Exchange Place, suite 1800
      New York, NY 10005
      corey@boddieassoc.com

      Genie Investments NV
      c/o David Hughes
      2812 Pat Tillman Drive
      Springfield, Illinois 62711
      dhughes@genieinvestments.com

      Legal counsel for Genie Investments:
      AW Securities Law
      c/o Adam Walker
      4010 Pennsylvania Ave., Suite 115-10
      Kansas City, Missouri 64111
      adam@awsecuritieslaw.com

In witness whereof, the Parties hereto have executed this Settlement Agreement on the date(s) set forth below.

GENIE INVESTMENTS NV

By:        *David Hughes*
             David Hughes (May 15, 2024 10:58 CDT)
             David Hughes

Title:     Managing Member

Date:    _____

VELANOS PRINCIPAL CAPITAL

DocuSigned by:

By:     
        D85D494D21D149B...
        Joshua Wearmouth

Title:    _____

        5/16/2024
Date:    _____

11

## **EXHIBIT A**

### RECIPIENT ACCOUNT INFORMATION

Routing #:      043000096

Acct #:         ███████████

Bank info:      PNC BANK
                500 First Avenue
                Mailstop: P7-PFSC-03-W
                Pittsburgh, PA 15219

**EXHIBIT B**

## AFFIDAVIT OF JOSHUA WEARMOUTH

Joshua Wearmouth, the CEO of Velanos Principal Capital Inc., a Canadian corporation, being duly sworn, depose and say:

1.     I am Joshua Wearmouth, the CEO of Velanos Principal Capital, Inc., a Canadian corporation ("Velanos").

2.     As CEO of Velanos, I attest that I have given our attorney Corey D. Boddie all relevant, unredacted documentation concerning the Velanos account which is currently being traded on the Forex platform on May 13, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 13th day of May 2024.

Joshua Wearmouth,
CEO of Velanos Principal Capital Inc.

Sworn to before me
This 13 day of
May, 2024

COREY DELON BODDIE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02BO6282620
Qualified in New York County
My Commission Expires: May 28, 2025

**EXHIBIT C**

GENIE INVESTMENTS NV,

     Claimant,

v.                                                    JAMS Ref No. 5425001617

VELANOS PRINCIPAL CAPITAL, INC.,


     Respondent.

---

## <u>JOINT MOTION FOR ENTRY OF CONSENT AWARD</u>

Claimant Genie Investments NV (Genie) and Respondent Velanos Principal Capital (Velanos) have executed a settlement agreement intended to resolve all claims asserted in this matter. As a condition of that settlement agreement (attached to this motion as **<u>Exhibit A</u>**) and pursuant to Rule 28(c) of JAMS Comprehensive Arbitration Rules & Procedures, Genie and Velanos move jointly for entry of a consent award setting forth the following terms in such form and with such other terms as the arbitrator deems necessary and appropriate to effectuate the Parties' settlement agreement:

1.     On or about October 21, 2022, the Parties entered into a "Joint Venture Agreement" (JVA).

2.     On October 25, 2023, Genie commenced this proceeding, identified as JAMS Ref No. 5425001617 (the Arbitration) against Velanos, seeking both a determination that Velanos materially breached the JVA and an award of compensatory and other damages.

3.     During this Arbitration, the Parties completed the discovery permitted by the rules and scheduling order governing this Arbitration. In addition, the Parties briefed multiple motions, including a dispositive motion submitted by the Claimant.

**EXHIBIT C**

4.      Before concluding the Arbitration, the Parties reached and executed a settlement agreement intended to resolve, among other things, all claims and defenses asserted herein.

5.      As a condition of that settlement agreement, the Parties agreed to consent to an award in this Arbitration stating (a) that Velanos breached the JVA and (b) that Genie is awarded damages for that breach in the amount of twenty million dollars ($20,000,000.00).

6.      Throughout the entirety of this Arbitration, each Party has been represented by an attorney and has received legal counsel and advice concerning potential outcomes if this Arbitration were to end in a determination on the merits, whether based on a dispositive motion or full evidentiary hearing. The instant motion reflects the Parties' respective decisions to resolve the dispute at issue in this Arbitration through settlement on the terms set forth herein, rather than through a determination by the arbitrator.

7.      The damages awarded to Genie are due and payable by Velanos within fifteen (15) calendar days following entry of this award.

8.      Immediately upon entry of the Consent Award, Genie shall, at its sole discretion, have the option to apply to any court of competent jurisdiction for confirmation of the Consent Award and, thereby, obtain a valid and enforceable judgment against Velanos for the full amount of the arbitration award, plus post-judgment interest at the rate of nine percent (9.0%) annually.

9.      Each Party shall bear one half of all fees assessed by JAMS in connection with this Arbitration, except to the extent that any fee, penalty, or other charge assessed by JAMS is the result of either Party's lateness, delay, or noncompliance with any rule or order governing this Arbitration, in which case the Party whose lateness, delay, or noncompliance resulted in a fee, penalty, or other charge shall be fully responsible for paying it.

**EXHIBIT C**

Respectfully submitted,

_____

Adam Walker
AW Securities Law
4050 Pennsylvania Ave., Suite 115-10
Kansas City, Missouri 64111

*Counsel for Genie Investments NV*

_____

Corey D. Boddie
Boddie & Associates P.C.
40 Exchange Place, suite 1800
New York, NY 10005
corey@boddieassoc.com

*Counsel for Velanos Principal Capital*

# Exhibit C

## AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

THIS AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (the "Amendment") is entered into this ___ day of October, 2024 (the "Effective Date") by and between Aaron Cohen, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Genie Investments NV, Inc. (the "Debtor") and Velanos Principal Capital, a business entity registered in Ontario, Canada ("Velanos" and collectively with the Trustee, the "Parties").

WHEREAS, on February 21, 2024, (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") initiating the case styled: *In re Genie Investments NV, Inc.*, Case No: Case No. 3:24-bk-00496-BAJ (the "Bankruptcy Case").

WHEREAS, the Debtor and Velanos entered into that certain Settlement Agreement and Release of Claims (the "Existing Agreement") with an effective date of May 15, 2024 which settled certain claims the Debtor held against Velanos.

WHEREAS, on August 12, 2024 the Bankruptcy Court entered an Order Converting Case From Chapter 11 to Chapter 7 and the Trustee was appointed to administer the Debtor's estate. As a result, the Trustee now holds the Debtor's claims against Velanos.

WHEREAS, the Trustee and Velanos desire to amend the Existing Agreement to substitute the Trustee as a party to the Existing Agreement in place of the Debtor.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Amendments to the Existing Agreement</u>. The Existing Agreement is hereby amended as follows:

 a) The Trustee is substituted in the Existing Agreement in place of the Debtor. All references in the Existing Agreement to "Genie Investments NV, a Nevada corporation" are replaced with "Aaron Cohen, Chapter 7 Trustee for the bankruptcy estate of Genie Investments NV, Inc." and all references to "Genie" are replaced with "Trustee", with the exception of paragraphs a. b., and c on page 1 of the Existing Agreement.

 b) Paragraph 15 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

15. <u>Pendency of Bankruptcy Proceedings</u>. The Parties acknowledge that this Settlement Agreement is contingent upon the approval of this Settlement Agreement by the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") in the bankruptcy case styled *In re Genie Investments NV, Inc.*, Case No: Case No. 3:24-bk-00496-BAJ (the "Bankruptcy Case"). If the Trustee is unable to obtain Bankruptcy Court

approval of the Settlement Agreement in the form of a non-appealable and final order, the Settlement Agreement shall be voided as to any remaining obligations of the Parties, except that the Trustee is entitled to retain any part of the Settlement Amount previously paid by Velanos and the Consent Award entered pursuant to ¶ 6 of the Settlement Agreement shall remain in full force and effect.

c)    Paragraph 16 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

16. <u>Choice of Law and Venue</u>. This Settlement Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Florida applicable to contracts made and to be performed fully within the State of Florida.  The Parties consent to the jurisdiction of the Bankruptcy Court for any all disputes arising out of or resulting from this Settlement Agreement.

d)    Paragraph 26 of the Existing Agreement is hereby amended with the addition of the following sentence at the end of Paragraph 26:

"The Trustee is permitted to attach a copy of this Settlement Agreement to the motion to approve the Settlement Agreement (the "<u>Motion</u>") filed with the Bankruptcy Court and serve the Motion with attached Settlement Agreement on all persons required to receive service of the Motion pursuant to the United States Bankrtupcy Code and Federal Rules of Bankruptcy Procedure."

e)    Paragraph 27 of the Existing Agreement is hereby amended to delete the following indicated by a ~~strike-through~~ and replaced with the following indicated by an <u>underline</u>:

~~Genie Investments NV~~
~~c/o of David Hughes~~
~~2812 Pat Tillman Drive~~
~~Springfield, Illinois 627111~~
~~dhughes@genieinvestments.com~~

<u>Aaron Cohen, Chapter 7 Trustee</u>
<u>P.O. Box 4218</u>
<u>Jacksonville, FL 32201-4218</u>

~~Legal Counsel for Genie Investments:~~
~~AW Securities Law~~
~~c/o Adam Walker~~
~~4010 Pennsylvania Ave., Suite 115-110~~
~~Kansas City, Missouri 64111~~
~~adam@awsecuritieslaw.com~~

78252077;1

Legal Counsel for the Trustee:
Raye Elliott
Akerman LLP
401 E. Jackson St., Ste. 1700
Tampa, FL 33602
raye.elliott@akerman.com

    f)     Exhibit A to the Existing Agreement is deleted in its entirety. Bank account information for the Trustee has previously been provided to counsel for Velanos.

2.     <u>Miscellaneous</u>.

    a)     This Amendment is governed by and construed in accordance with the laws of the State of Florida applicable to contracts made and to be performed fully within the State of Florida. The Parties consent to the jurisdiction of the Bankruptcy Court for any all disputes arising out of or resulting from this Amendment.

    b)     This Amendment shall inure to the benefit of and be binding upon each of the Parties and each of their respective successors and assigns.

    c)     The headings in this Amendment are for reference only and do not affect the interpretation of this Amendment.

    d)     This Amendment may be executed in counterparts, each of which is deemed an original, but all of which constitute one and the same agreement.

    e)     This Amendment constitutes the sole and entire agreement between the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

    f)     Each Party shall pay its own costs and expenses in connection with this Amendment (including the fees and expenses of its advisors, accountants, and legal counsel).

78252077;1

IN WITNESS WHEREOF**,** the Parties intending to be legally bound, have duly executed and delivered this Amendment as of the Effective Date.

**VELANOS PRINCIPAL CAPITAL**

By: _____
        Joshua Wearmouth

Its: Chief Executive Officer

Dated: _____10/17/2024_____

**AARON R. COHEN, CHAPTER 7 TRUSTEE**

_____

Aaron R. Cohen, as Chapter 7 Trustee of the bankrtupcy estate of Genie Investments NV, Inc.

Dated: _____10/16/2024_____

4

# EXHIBIT D

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

GENIE INVESTMENTS NV INC.,                    Case No.: 3:24-bk-00496-BAJ

    Debtor.                                    Chapter 7

_____/

AARON R. COHEN, Chapter 7 Trustee,

    Plaintiff,                                 Adversary No. 3:25-ap-00007-BAJ

v.

VELANOS PRINCIPAL CAPITAL, INC.,

    Defendant.

_____/

## FINAL JUDGMENT

THIS PROCEEDING came before the Court on the Motion of Plaintiff, Aaron R. Cohen,

Chapter 7 Trustee, for a Final Default Judgment (Adv. Doc. __).  Based upon the Default entered

by the Clerk on February 19, 2025, against Defendant, Velanos Principal Capital, Inc. ("Velanos"),

for failure to serve or file any paper in response to the Complaint for Confirmation of Arbitration Award (the "<u>Complaint</u>") as required by law, the Declaration of Aaron R. Cohen, Chapter 7 Trustee (the "<u>Trustee's Declaration</u>"), and there appearing sufficient cause, the Court hereby,

**FINDS AND ORDERS:**

1.      On January 10, 2025, the Trustee filed a one-count Complaint, whereby the Trustee sought to confirm the arbitration award in the amount of $20 million entered by the JAMS arbitrator (Adv. Doc. 1).

2.      A Summons was issued by the Clerk on January 13, 2025.

3.      A copy of the Complaint and Local Rule 7001-1 together with the Summons were served on January 21, 2025, by U.S. mail to Velanos, Attn.: Joshua Wearmouth, its Chief Executive Officer, 20101 SW Cypress Street, Newport Beach, CA 92660 and to Velanos at 4695 MacArthur Court, Suite 1100, Newport Beach, CA 92660

4.      No responsive pleading or motion has been filed by Velanos within the time specified by Rule 7012, Federal Rules of Bankruptcy Procedure, and no extension of time was sought or obtained by Velanos.

5.      On February 19, 2025, the Clerk issued a Default against Velanos.

6.      As a result of Velanos' default, each and every allegation set forth in the Complaint, which are incorporated by reference herein, is deemed admitted by the Defendant. *See*, *e.g.*, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred form contesting on appeal the facts thus established.'"); *Suntrust Bank v. Truzman*, 2010 WL 3359710, at *2 (M.D. Fla. August 6, 2010) (determining that

because a default was properly entered, the plaintiff was deemed to have admitted the allegations made in plaintiff's complaint); *see also* Fed. R. Bankr. P. 7055 (making Fed. R. Civ. P. 55 applicable in adversary proceedings, which provides, in part, that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the clerk must enter the party's default).

7.     Given the substantial, undisputed proof set forth in the Complaint, **JUDGMENT** is hereby entered against Velanos as follows:

8.     Final Judgment is hereby entered in favor of the Trustee and against Velanos.

9.     The arbitration Award is confirmed.

10.     Plaintiff, Aaron R. Cohen, in his capacity as Chapter 7 Trustee of the bankruptcy estate of Genie Investments NV, Inc., whose mailing address is P.O. Box 4218, Jacksonville, FL 32201-4218, shall recover from Defendant, Velanos Principal Capital, Inc., whose last known address is Attn. Joshua Wearmouth, its Chief Executive Officer, 20101 SW Cypress Street, Newport Beach, CA 92660, the sum of **$20,000,000.00**, that shall bear interest at the rate of nine percent (9%), as agreed by Velanos in the Settlement Agreement for which let execution issue.

11.     This Court retains jurisdiction of this action to enter further orders, requests or judgments that are proper, including, but not limited to: (i) orders authorizing the issuance of writs of replevin, writs of execution, writs of garnishment, and other post-judgment collection remedies; (ii) requests for punitive, compensatory, special or other damages; and (iii) requests for the payment of pre-judgment interest, attorneys' fees, and costs.

Copies to:

Raye C. Elliott, Esq.
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602
*Attorney for Plaintiff, Aaron R. Cohen,*
*Chapter 7 Trustee*

Velanos Principal Capital, Inc.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660

Velanos Principal Capital, Inc.
Attn. Joshua Wearmouth, its Chief
Executive Officer
20101 SW Cypress Street
Newport Beach, CA 92660

80188897;1